UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 1-6<br><br>And<br><br>JOHN DOE 7-12<br><br>    *Plaintiffs,*<br><br>    v.<br><br>DOUGLAS A. COLLINS,<br>Secretary of Veterans Affairs<br>801 Vermont Avenue, NW<br>Washington, D.C.  20420<br><br>    *Defendant.* | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Comes now Plaintiffs Jane Doe 1-6 and John Doe 7-12, by and through their attorneys, and hereby file this Complaint for Injunctive and Declaratory Relief against Defendant Doug A. Collins, Secretary of Veterans Affairs.   Plaintiffs seek relief pursuant to the Administrative Procedure Act and the First and Fifth Amendments to the U.S. Constitution, including but not limited to injunctive and declaratory relief and other equitable relief, compensatory damages, litigation expenses and reasonable attorneys' fees, based on Defendant's violation of Plaintiffs' rights.

## Jurisdiction

1

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the matter arises under the First and Fifth Amendments to the U.S. Constitution and the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

2. The Court has personal jurisdiction over the Department of Veterans Affairs and Defendant Collins in his official capacity as the Secretary of Department of Veterans Affairs.

## Venue

3. Venue is the District of Columbia and this judicial district is proper because the constitutional and statutory violations took place in the District of Columbia, where the Department of Veterans Affairs and Plaintiffs' official office is located, Veterans Benefits Administration (VBA) – Office of Equity Assurance (OEA) was based.

## Parties

4. The Plaintiffs are nonpartisan career civil servants employed in the Agency's OEA to serve Veterans.

5. Defendant Douglas A. Collins is the Secretary of Veterans Affairs and the Department of Veterans Affairs is an Agency of the United States federal government.

## Factual Allegations

6. The Plaintiffs are nonpartisan career civil servants selected for positions within Veterans Affairs ("VA" or "Agency"), Veterans Benefits Administration (VBA), Office of Equity Assurance ("OEA") to serve Veterans and provide Veterans equity.  The Plaintiffs are not advocates for any person or policy  other than all Veterans.  The Plaintiffs' years of service to the federal

government range from six to twenty-four years and none of the Plaintiffs have been accused of poor performance or any misconduct.

7. The OEA office was organized in 2023, and filled positions in 2023 and 2024, primarily from employees who were seasoned career professionals with an extensive background in specialty areas that are critical positions with the VBA or the VA over the years; including management and program analysts, IT professionals, administrative staff, claim processors quality assurance specialists, rating Veteran service Representatives, records research specialist, Contract specialists, social workers, and vocational rehabilitation counselors. Furthermore, none of the employees are probationary. The Plaintiffs include disabled Veterans and Veterans, cancer survivors, individuals facing personal hardships, such as loss of family members and impacted by natural disasters, and even a pregnant employee.

8. The job of the OEA was to identify disparities in Veterans receiving their benefits and find ways to ensure equity. For example, OEA did work that could address challenges faced by rural Veterans in accessing their benefits due to geographic barriers and limited connectivity. Many VA communications—such as medical appointment notifications and benefit letters—are delivered in formats that require digital access, which can create obstacles for Veterans living in remote areas or for older Veterans who may be unfamiliar with VA technology. To ensure these Veterans receive the benefits they have earned, OEA could identify areas where disparities existed and implement solutions to remove barriers to access. This could include evaluating how critical information is delivered and providing alternative options that accommodate Veterans in rural locations. Additionally, Plaintiffs work to ensure that Veterans who may struggle with navigating digital systems have clear, accessible pathways to their healthcare and benefits. By proactively addressing challenges as such, OEA sought to help ensure that all Veterans could fully utilize the

resources available to them and access the benefits that they earned. Another example would be addressing disparities in areas with a geographical disadvantage, such as Puerto Rico or Hawaii. In addition, the employees performed work such as creating projects to improve access for Veterans such as rural Veterans who resided far away from VA offices; conducted research and analysis to validate or invalidate findings from a recent Government Accountability Office report, GAO-23-106097, that found disparities in the granting of benefits to Veterans based on race; worked to create data sources to easily identify areas where the VA needed to conduct outreach and work with Veteran Service Organizations (VSOs) to bridge gaps in communications with Veterans communities. The focus of the OEA office was to ensure equity in delivery of VBA benefits and services to all Veterans.

9. On January 20, 2025, Donald Trump was inaugurated as the forty-seventh President of the United States and on the evening of January 20, 2025, he signed Executive Order ("EO") 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*. The EO described DEI and DEIA programs as "illegal and immoral." The White House issued a statement on January 21, 2025, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, which described DEIA programs as "dangerous" and causing "disastrous consequences," "demeaning and immoral," "illegal," and violative of civil rights laws, undermining of "national unity, as they deny, discredit, and undermine the traditional American values . . . in favor of an unlawful, corrosive, and pernicious identity-based spoils system," resulting in "disastrous consequences" on the basis of "pernicious discrimination."

10. EO 14151 ordered all executive agencies to "terminate, to the maximum extent allowed by law," all DEI, DEIA, and 'environmental justice' offices and positions." The January 21, 2025, White House statement required the Executive Branch "to terminate all discriminatory

and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements."

11. On January 21, 2025, Charles Ezell, the Acting Director, U.S. Office of Personnel Management (OPM), issued a Memorandum to the Heads and Acting Heads of U.S. Government Departments and Agencies, directing federal agencies to take prompt actions regarding the offices and agency sub-units focusing exclusively on DEIA initiatives and programs, including sending agency-wide notices to employees informing them of the closure and sending notifications to all employees of DEIA offices that they are being placed on paid administrative leave immediately as the agency takes steps to close and end all DEIA initiatives, offices and programs.

12. On January 22, 2025, the Acting Secretary of the VA, Todd B. Hunter sent an email to all employees at the VA:

### MESSAGE FROM THE ACTING SECRETARY

We are taking steps to close all agency diversity, equity, inclusion, and accessibility (DEIA) offices and end all DEIA-related contracts in accordance with President Trump's executive orders titled Ending Radical and Wasteful Government DEI Programs and Preferencing and Initial Rescissions of Harmful Executive Orders and Actions.

These programs divided Americans by race, wasted taxpayer dollars, and resulted in shameful discrimination.

We are aware of efforts by some in government to disguise these programs by using coded or imprecise language. If you are aware of a change in any contract description or personnel position description since November 5, 2024, to obscure the connection between the contract and DEIA or similar ideologies, please report all facts and circumstances to DEIAtruth@OPM.gov within 10 days.

There will be no adverse consequences for timely reporting this information. However, failure to report this information within 10 days may result in adverse consequences.

In addition to the above, all personnel are directed to withdraw any final or pending documents, directives, orders, materials, and equity plans issued by the agency in response to now-repealed Executive Order 14035, Diversity, Equity, Inclusion and Accessibility (DEIA) in the Federal Workforce (June 25, 2021). These actions must be taken immediately, but no later than January 31, 2025.

Thank you for your attention to this important matter.

Todd B. Hunter

Acting Secretary.

  13. On January 22, 2025, OEA employees were invited to an impromptu meeting with the former Executive Director where they were informed that they would be placed on administrative leave. All employees were told to provide personal email information so that notices of administrative leave could be sent since they would no longer have access to their government email accounts once they logged off for the day. Additionally, employees were instructed to polish their resumes and gather SF-50s to provide to Human Resource personnel upon receipt of phone call at a later date. OEA employees received a January 22, 2025, email from Tracey Therit, Chief Human Capital Officer:

"This email provides you with important information regarding your employment status. Effective today, January 22, 2025, at 5:00 P.M. EST, you and employees within the Veterans Benefits Administration (VBA), Office of Equity Assurance will be placed on administrative leave with full pay and benefits. This administrative leave is not being done for disciplinary purpose."

  14. On January 22, 2025, the OEA office was closed/shut down. On January 24, 2025, OPM issued a memorandum entitled, Guidance Regarding RIF of DEIA Offices (addressed to Heads and Acting Heads of Department and Agencies) which informed agencies to take action to terminate, to the maximum extent of the law, all DEIA offices and positions within sixty days. Additionally, agencies were told to begin issuing RIF notices to all employees of DEIA offices immediately.

  15. On January 24, 2025, Charles Ezell, Acting Director, U.S. Office of Personnel Management issued a Memorandum to the Heads and Acting Heads of Departments and Agencies concerning Guidance Regarding RIFs of DEIA Offices. In this Memorandum, Mr. Ezell states:

6

"Pursuant to its authority under 5 U.S.C. § 1103(a)(1) and (a)(5), the U.S. Office of Personnel Management ("OPM") is providing the additional guidance to agencies regarding the President's executive order titled, "Ending Radical and Wasteful Government DEI Programs and Preferencing. In accordance with that order, each agency, department, or commission head shall take action to terminate, to the maximum extent allowed by law, all DEI, DEIA, and "environmental justice" offices and positions within 60 days. OPM's initial guidance required agencies to submit written plans no later than January 31, 2025, for exercising a reduction in force (RIF) action regarding the employees who work in a DEIA office. However, agencies **can and should begin issuing RIF notices to employees of DEIA offices now.** Agencies are reminded to define the competitive area solely in terms of the DEIA office where the employees worked. See 5 C.F.R. § 351.402. Please contact DEIAreports@opm.gov if you have any questions regarding this memorandum. OPM can provide sample RIF documents upon request."

16. On January 27, 2025, the VA issued a press release. The press release provides as follows:

The Department of Veterans Affairs announced today that it has completed its initial implementation of President Trump's executive order to end DEI within the federal government.

To date, VA has placed nearly 60 employees who had been solely focused on diversity, equity and inclusion activities on paid administrative leave. The combined annual salary (base pay, locality pay and additional earnings) of these employees totals more than $8 million, an average of more than $136,000/year per employee. One such employee is making more than $220,000 per year.

Additionally, VA has identified several contracts for DEI-related trainings, materials and other consulting services, which the department is currently working to cancel. The combined value of these contracts totals more $6.1 million.

In the coming weeks and months, VA will be working to reallocate these resources to better support the Veterans, families, caregivers, and survivors the department exists to serve.

VA is also in the process of taking down a variety of DEI-related media from its various digital properties.

"Under President Trump, VA is laser-focused on providing the best possible care and benefits to Veterans, their families, caregivers, and survivors. We are proud to have abandoned the divisive DEI policies of the past and pivot back to VA's core mission. We look forward to reallocating the millions of dollars the department was spending on DEI programs and personnel to better serve the men and women who have bravely served our nation," said VA Director of Media Affairs Morgan Ackley.

17. On January 28, 2025, a government wide email was sent to federal employees offering a voluntary resignation option with continued pay through September 2025, but Plaintiffs did not receive it since their access had been revoked January 22, 2025. The email was only sent to active government employees, and it required responses from active government email addresses.

18. While on administrative leave, many of the Plaintiffs reached out to Human Resources point of contacts for specific details on the use of non-disciplinary administrative leave and timeframes, and more importantly, questions regarding the next steps for reassignments within VBA. Many were informed by internal leadership personnel within and outside of OEA – to include but not limited to direct communication from VBA Human Chief Officer that included VBA planned to absorb all the OEA staff who were placed on administrative leave and reassign to vacant funded positions at the same or lower grade level. Additionally, VBA senior management was advocating for placing the employees in identified positions. The Plaintiffs were advised to provide information on their experience and prior positions and positions of interest within the Agency, which they did. Senior management at the VBA drafted and presented a plan to OPM to place all the employees within vacant VBA positions at the VA. Plaintiffs were informed that VBA was attempting to get them reassigned, and specifically, the Chief of Staff Brandye Terrell and the Acting Undersecretary Michael Frueh, supported reassignment of the Plaintiffs. VBA's Chief Human Capital Officer confirmed that there were enough vacancies for reassignment of all 27 employees. Many of the Plaintiffs contacted the offices where they worked prior to accepting

positions with OEA and were advised that their prior offices would accept them into vacant positions, or contacted other offices for reassignments and were informed they would be accepted into other positions, and were informed that some of the Plaintiffs would be welcomed if senior management at the VA permitted it. Despite these facts, the Office of Personnel Management (OPM) forced the VBA to only allow terminations instead of reassignment of all 27 employees.

19.     On February 5, 2025, OPM issued Memorandum Re: Further Guidance Regarding Ending DEIA Offices, Programs and Initiatives. On February 14, 2025, the Plaintiffs were advised that they were being terminated through a Specific Reduction in Force and that all steps necessary to ensure the integrity and validity of the action was correct and proper.  The Plaintiffs were not offered the option of reassignment.  The RIF competitive area was limited to the OEA despite the fact that the office had already closed on January 22, 2025. The Plaintiffs did not receive due process.  The Specific Reduction in Force Notice was issued at 6:13 pm EST, after the effective date and time, by Tracey Therit, Chief Human Capital Officer, and provides as follows:

"We regret to inform you that you have been identified for separation by a Reduction in Force (RIF) action.  We have taken all steps necessary to ensure the integrity and validity of this action.  You will be separated from Federal service effective at 4:00 p.m. on February 14, 2025.  We appreciate your dedicated service to this organization.  Per Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing* and 5 C.F.R. Section 351.605, we are closing your assigned office and conducting a reduction in force.  This letter constitutes a specific reduction in force.  The following is provided for your information and action."

20.     While this notice was addressed to all Plaintiffs on the said effective date, Plaintiffs received this notice hours, even days after it was sent and made effective. In carrying out the

Specific Reduction in Force, the Agency made no attempt to comply with its own and OPM guidelines for implementing a reduction in force. Those guidelines require a 60-day notice to the impacted employees, and that the Agency create a retention register, and offer reassignment or a severance payment to the employees.

21. At the VA, there have been several reductions in force in VBA such as in the Insurance business line in Philadelphia and the Education Department in St. Louis. In those RIFs, most of the non-probationary federal employees were given reassignment opportunities to fill Agency vacancies.

22. In terminating the Plaintiffs, the Agency failed to follow the RIF procedures and failed to complete the Standard Form 8 which allows employees to apply for unemployment benefits.

23. On February 26, 2025, OPM issued Memorandum Re: Guidance on Agency RIF and Reorganization Plans Requested by Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative. On February 27, 2025, the Plaintiffs and all other employees in the OEA were informed that their terminations were being rescinded and they would be placed on administrative leave status from February 14, 2025. Despite placing the Plaintiffs on retroactive paid administrative leave, the Agency failed to pay the Plaintiff's their regular pay which was due February 28, 2025, and only paid Plaintiff for one week for that pay period. Plaintiffs have made numerous requests to VA, Tracey Therit, and Aaron Lee to collect wages due to no avail. In the same email, the Plaintiffs were issued a notice of a reduction in force because the OEA office was identified as a DEIA office; Plaintiffs, however, have not received a Specific Reduction in Force. Additionally, Plaintiffs remained blocked out of their office emails, and are unable to apply for vacant positions within the VA or apply for details or accept

reassignments. Defendant's actions have rendered the Plaintiff's unable to continue their careers as federal employees because in applying for any position within the federal government they must disclose that they were placed on administrative leave and terminated because it was determined that their work focused "solely on diversity, equity and inclusion activities;" and they were returned to work and placed on administrative leave with notice that they would be subjected to a reduction in force because they were DEIA employees. Their Standard Form 50s will reflect that they worked in the Office Equity Assurance and were terminated. Several of the Plaintiffs had job offers pending within the VA and those offers were withdrawn after they were labelled as DEIA employees.

24. On March 13, 2024, Plaintiffs received a Specific Reduction in Force Notice, advising them that they will be separated from federal service on May 10, 2025. The Notice provides that "[P]er Executive Order 14151, Ending Racial and Wasteful Government DEI Programs and Preferencing and 5 C.F.R. 351.605, we are closing your assigned office and conducting a reduction in force." The Notice further provides that the Competitive Area is the DEIA office "[P]er OPM Memorandum dated January 24, 2025, competitive area defined as: DEIA office where the employee worked." In addition, the Notice states that the Competitive Level is "[A]ll positions within the Office of Equity Assurance."

25. On March 13, 2025, federal judges in San Francisco and Maryland issued orders directing several federal agencies, including the Defendant here, to reinstate probationary employees who were terminated by agencies based on guidance from OPM issued in January and February 2025. Earlier on February 27, 2025, Judge William Alsup in the Northern District of California ruled that communications from OPM to federal agencies regarding the termination of probationary employees amounted to illegal activities because "OPM does not have any authority

whatsoever, under any statute in the history of the universe to hire and fire employees within another agency."

26.     Plaintiffs have been and continue to be irreparably damaged by their sudden placement on administrative leave on January 22, 2025 and removal of access to work computers and the network, termination and reinstatement without access to the Agency's network, and Notice of Specific Reduction in Force.  As noted, the Plaintiffs are non-partisan career employees with government service up to twenty-four years.  Plaintiffs have a companion office within the VA, the Office of Health Equity, and none of the employees in that office were terminated through a RIF and that office was not designated as a DEIA office and closed.  All were working on different projects and assignments on January 22, 2025 and were terminated from access to their work and professional colleagues at the VA and other agencies with virtually no notice.  One Plaintiff, who worked on research and service endeavors with employees at the Department of Defense and the Department of Labor, received advanced notice the afternoon of January 22, 2025 that it was likely the OEA office would be closed, and she  was forced to scramble to notify coworkers and internal and outside colleagues that she would be unable to continue her collaboration and support, to attempt to lessen the damage to her professional reputation and belief that she had abandoned her responsibilities and commitments.  The Plaintiffs are dedicated civil servants who have worked for the good of all Veterans, and have been selected for numerous awards based on their performance.  Their careers have been destroyed by false accusations that their work was "wasteful" and they engaged in discrimination and their work was "divisive" and "shameful."  These sentiments have been echoed publicly by President Trump, Elon Musk, and members of Congress. Future prospective employers will see the employment applications of the

Plaintiffs and see long term federal government employees who were abruptly terminated and conclude it was done because of misconduct or performance.

### Count I
### Violation of the Administrative Procedure Act
### 5 U.S.C. § 706

Plaintiffs incorporate the allegations in paragraphs 1 through 26 as if fully set forth herein.

27. The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, provides that a district court may hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, and in violation of the Constitution. The APA permits the Court to review final agency action, as well as action for which there is no other adequate remedy. See 5 U.S.C. § 702, 704. Defendant has determined erroneously that the Office of Equity Assurance is a DEIA office simply because it has the word "equity" in its title, when the reference to "Equity" in OEA is used broadly to connotate ensuring all veterans receive access to veterans services and benefits. Defendant's erroneous identification of Plaintiffs' as working in DEI/DEIA positions, placement on administrative leave, termination, denial of reassignment offered to other Agency employees who are subjected to a reduction in force, reinstatement but continuing to identify Plaintiffs as DEIA employees and a Specific Reduction in Force Notice, are the very definition of arbitrary, capricious and abusive agency action.

28. The actions taken against Plaintiffs are contrary to their constitutional right under the First Amendment to freedom of speech and association, and were taken based upon their (assumed) beliefs about a political issue, which is irrelevant while they serve in positions ensuring equitable treatment of all veterans. The actions taken against Plaintiffs are contrary to their rights under the First and Fifth Amendments, including the freedom of association; freedom from

13

infringement of their liberty interest in their names and reputation; and equal protection under the laws of the United States.

29. Although Plaintiffs have the right to challenge any future reduction in force before the Merit Systems Protection Board (MSPB), any hearing before the MSPB will not address the violation of the Administrative Procedure Act and final agency decision that the OEA was a DEIA office, and the defamatory statements made about Plaintiffs as they were abruptly placed on administrative leave for being "DEIA" employees, including they engaged in discrimination and were removed from employment because they worked solely on diversity, equity and inclusion activities, and terminated in violation of their the First and Fifth Amendment rights.

30. It is unprecedented for a group of career service employees to be terminated pursuant to public statements by the President that their last assignment involved dangerous, demeaning, immoral and illegal activity, undermining of national unity and denying, discrediting and undermining traditional American values, supporting an unlawful, corrosive and pernicious identity-based system, stigmatizing and demeaning hardworking Americans, resulting in tragic and disastrous consequences on the basis of discrimination. The President's statements were followed by equally demeaning and defaming statements by the Acting Secretary of the VA, and a press release issued by the VA, and the ongoing threat that these employees may be targeted by unfair reporting by colleagues who believe that their reinstatement is "a change in any ... personnel position description since November 5, 2024, to obscure the connection between ... [the position description] and DEIA or similar ideologies" since non-DEIA employees are still encouraged to report all facts and circumstances within 10 days (presumably, from becoming aware of those changes) or face adverse consequences.

31. There is no other remedy than a judicial remedy for the harm Plaintiffs have suffered and will continue to suffer.

## Count II

**Violation of the U.S. Constitution, Amend. 1**

Plaintiffs incorporate the allegations in paragraphs 1-31 as if fully set forth herein.

32. The First Amendment provides in pertinent part that Congress shall make no law abridging the freedom of speech, or the right of the people to petition the Government for a redress of grievances. It further prohibits the regulation or censure of speech based on "'the specific motivating ideology or the opinion or perspective of the speaker.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015) (citations omitted). This government action is a "'blatant' and `egregious form of content discrimination'" and is subject to strict scrutiny." *Reed,* 576 U.S. at 168, 171. Plaintiffs' identification as "DEIA" employees are contrary to their constitutional right under the First Amendment to free speech. They were targeted because of their assumed beliefs about a domestic political issue which was unrelated to the performance of their duties in serving Veterans. The DEIA designation of OEA as a DEIA office and the Plaintiffs as DEIA staff constitute viewpoint discrimination because it singled out and punished Plaintiffs for their perceived association with and advocacy on behalf of DEIA policies. The fact that the VA prepared a plan to reassign the Plaintiffs and presented it to senior leadership at the Agency and OPM and that plan was rejected and the Agency was told to terminate the Plaintiffs as DEIA employees confirm that Plaintiffs were terminated in retaliation for their (assumed) belief about DEIA policies, a political issue disfavored by the new Administration. Plaintiffs were damaged by the Agency's erroneous identification of Plaintiffs as working in a DEI/DEIA position, placed on administrative leave and terminated, denied reassignment offered to other Agency employees who are subjected to a

reduction in force, and reinstated but again designated as DEIA employees. The Project 2025 plan as outlined at project2025.org and a tracker to identify and erase DEI/DEIA from the federal government evidences the political motivation and movement of the current White House administration and agency leads to include VA. The designation of the OEA office as a DEIA office and the Plaintiffs as DEIA employees has caused and is causing ongoing and irreparable harm to the Plaintiffs.

## Count III

### Violation of U.S. Const. Amend. V

*Unconstitutional Denial of Due Process*

Plaintiffs incorporate the allegations in paragraphs 1-32 as if fully set forth herein.

33. The Fifth Amendment provides in pertinent part that "no person shall . . . be deprived of life liberty or property, without due process of law." Defendant designated Plaintiffs as DEIA employees that must be terminated from the Agency. The designations of Plaintiff as "DEIA" staff who discriminate against Americans and work in programs that divide Americans by race, waste taxpayer dollars and result in shameful discrimination, impairs multiple liberty and property interests protected by the Due Process Clause, and specifically are contrary to Plaintiffs' constitutional right to a liberty interest in their names and reputations. The designation of Plaintiffs as "DEIA" staff and OEA as a DEIA office, impairs Plaintiffs' ability to follow their chosen career profession with the federal government. The DEIA designation harms Plaintiffs' reputation interest by stigmatizing Plaintiffs as federal employees who discriminate against Americans and their work as "wasteful," "shameful" and "divisive." Plaintiffs were damaged by their erroneous identification as working in a DEI/DEIA position, placed on administrative leave and terminated,

denied reassignment offered to other Agency employees who are subjected to a reduction in force, reinstated but again placed on administrative leave due to an erroneous belief about the Plaintiffs being DEIA staff.

34. The Plaintiffs did not receive notice prior to being subjected to the DEIA designation. Plaintiffs were not aware of the conduct that would subject them to punishment or the severity of the potential punishment. Defendant did not and has not provided Plaintiffs with any opportunity to challenge the DEIA designation prior to the announcement that OEA was a DEIA office and they were DEIA staff. After the DEIA designation, Plaintiffs have not been given an opportunity by Defendnant to challenge the DEIA designation. No compelling government interest justifies Defendant's violation of Plaintiffs' due process rights. Defendant violated Plaintiffs' rights under the Fifth Amendment by their erroneous identification as working in a DEI/DEIA position and denial of reassignment offered to other Agency employees who are subjected to a reduction in force, and reinstatement and again placement on administrative leave to be terminated as DEIA employee. The decision to label OEA as a DEIA office was based on improper purposes, among them, for retaliatory purposes and to punish people who worked in DEIA office, compounded here because Plaintiffs did not work in DEIA offices. The DEIA designation is based on false premises and the sanctions it imposed are disproportionate to any perceived infraction. The Defendant chose to punish an entire office of 27 career civil servants, which confirms the retaliatory and disproportionate nature of the DEIA designation. This improper purpose and absence of any legitimate justification demonstrates that the DEIA designation is abusive and irrational. As a result of Defendants' actions, Plaintiff's Fifth Amendment right to due process has been violated. Defendant's actions have caused Plaintiffs to suffer ongoing and irreparable harm.

## Count IV

### Violation of U.S. Const. Amend. V

### *Unconstitutional Denial of Equal Protection*

Plaintiffs incorporate the allegations in paragraphs 1-34 as if fully set forth herein.

35. The Equal Protection Clause as incorporated by the Fifth Amendment to the U.S. Constitution prohibits the federal government, its agencies, its officials, and its employees form denying person the equal protection of the laws. The Equal Protection Clause prohibits the government from favoring similarly situated individuals without a constitutionally legitimate basis. *Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To justify discriminatory conduct, the government must put forward a "plausible reason" for its differential treatment. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313-14 (1993). The actions cannot be "so attenuated" from its conduct "as to render [it] arbitrary and irrational." *City of Cleburne v. Cleburne Center, Inc.,* 473 U.S. 432, 446 (1985) (citations omitted). "[A] bare desire to harm a politically unpopular group" is "not [a] legitimate state interest[.]" *City of Cleburne,* 473 U.S. at 447.

36. The purpose of the DEIA designation and designating OEA as a DEIA office was to discriminate against the Plaintiffs. The DEIA designation targeted the Plaintiffs with sanctions and denied all rights afforded to all other federal employees similarly situated to Plaintiffs. Plaintiff's companion office at the VA, the Office of Health Equity, was not designated as a DEIA office, and therefore not targeted for a reduction in force, and Plaintiffs are being treated differently from the employees in that office. The improper motive behind the DEIA designation is apparent on its face and through public statements by the Acting Secretary of the VA and through a press release. The government lacks even a rational basis for the DEIA designation of OEA as a DEIA

office. The DEIA designation seeks to punish the Plaintiffs for a perceived belief of advocating for DEIA policies, when the purpose of OEA was to seek equitable access to services and benefits to all Veterans. The DEIA designation of OEA as a DEIA office and the Plaintiffs as DEIA staff is a violation of the Equal Protection Clause and the DEIA designation has cause and is causing ongoing and irreparable harm to the Plaintiffs.

## Prayer for Relief

Wherefore, Plaintiffs respectfully request that the Court enter an award and judgment in favor of Plaintiff's, against Defendant as follows:

(a) A finding that Defendant's actions are in violation of the Administrative Procedure Act, 5 U.S.C. § 706, et seq.; and a violation of Plaintiff's rights under the First and Fifth Amendments;

(b) Injunctive and declaratory relief under the APA, the First and Fifth Amendments, and immediately enjoin Defendant from designating OEA as a DEIA office and Plaintiffs as DEIA staff and order a public recantation of these designations to VA employees and the public at large;

(c) Preliminarily, and then permanently, enjoin Defendant from designating OEA as a DEIA office and Plaintiffs as DEIA staff;

(d) Expenses and costs, including attorneys' fees, pursuant to 5 U.S.C. § 504; and

(e) Such other relief as the Court deems appropriate.

March 14, 2025                                    Respectfully submitted,

*/s/ David A. Branch*
David A. Branch
D.C. Bar No. 438764
Law Office of David A. Branch & Assoc., PLLC
1120 Connecticut Avenue, NW #500
Washington, DC 20036
202.785.2805
davidbranch@dbranchlaw.com